**In the Matter of the Involuntary Termination of the Parent–Child Relationship of D.L., A.L., V.L., N.L., F.L., and F.L., (Minor Children)**

**and**

**C.B., (Mother), F.L., (Father), Appellants–Respondents,**

**v.**

**Indiana Department of Child Services, Appellee–Petitioner.**

No. 20A05–1009–JT–635.

Court of Appeals of Indiana.

June 28, 2011.

Transfer Denied Sept. 28, 2011.

---

Kenneth R. Martin, Goshen, IN, Attorney for Appellants.

Matthew A. Skeens, Indiana Department of Child Services, LaGrange, IN, Robert J. Henke, DCS Central Administration, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Chief Judge.

### Case Summary and Issues

F.L. ("Father") and C.B. ("Mother") (collectively, "Parents") appeal the trial court's orders terminating their parental rights to their six children. Procedurally, they raise one threshold issue: whether the "Notice of Intent to Appeal" they filed within thirty days of the judgments is sufficient to have initiated the appeal in a timely fashion. Substantively, they raise three issues which we consolidate and restate as one: whether the evidence was sufficient to support termination of their parental rights to each of their children. Concluding the appeal was not timely initiated, we dismiss.

### Facts and Procedural History

Father and Mother are the parents of six children. In November 2008, the five youngest children were removed from Parents' home and placed in foster care because of a report of domestic violence and drug use in the home. Father and Mother were both arrested at that time. Parents'

oldest son was already outside the home in residential placement due to a delinquency case. All six children were adjudicated children in need of services ("CHINS") because in addition to Parents' incarceration, there was a history of drug abuse by Mother, and prior substantiated abuse or neglect in the home leading to a long history of Department of Child Services ("DCS") involvement with the family. A dispositional order and parental participation plan was entered.

As Parents intermittently cooperated with DCS and participated in services including supervised visits following the CHINS determination, the oldest child remained in residential treatment and the five youngest children remained in foster care. In January of 2010, the oldest child ran away from his out-of-home placement. On March 26, 2010, DCS filed petitions to terminate parental rights as to all six children. At the time of the termination hearing in August 2010, the oldest child's whereabouts were unknown.

The trial court issued two separate termination orders: on August 20, 2010, the court issued an order terminating Parents' parental rights to the five youngest children, and on August 23, 2010, the court issued an order terminating Parents' parental rights to the oldest child that more specifically addressed the special circumstances surrounding him. On August 30, 2010, Mother, through her trial counsel, filed a "Notice of Intent to Appeal and Request for Appointment of Counsel" with the trial court. This notice generally advised the trial court that she wished to appeal the termination of her parental rights and requested appointment of counsel to represent her in the appellate process. The trial court appointed appellate counsel the same day. On August 31, 2010, Father, by trial counsel, filed an identical notice with the trial court and the

court on that date appointed the same counsel to represent him. On September 23, 2010, appellate counsel filed a Notice of Appeal with respect to all six cause numbers, requesting assembly of the Clerk's Record and preparation of the transcript.

On January 18, 2011, Parents filed a Motion for Permission to File Belated Notice of Appeal in the trial court, noting that the Clerk's Record and Transcript had been completed and their brief was due February 7, 2011. The motion further noted that the September 23, 2010, Notice of Appeal could be construed as late, and requested permission to file a belated notice of appeal. The trial court entered an order finding it had no authority in a civil case to grant such relief, and filed with this court a Notice to Court of Appeals of Untimely Notice of Appeal. On February 7, 2011, Parents submitted their Brief of Appellants to this court and simultaneously filed a Verified Motion to Preserve Right to Appeal. In that motion, Parents' appellate counsel averred he read the Notice of Intent to Appeal filed by trial counsel as a Notice of Appeal and filed a Notice of Appeal immediately upon discovering his misapprehension. The motion requested this court allow the Brief of Appellants to be filed and "permit this cause to proceed on the merits just as though the Notice of Appeal had been filed within thirty (30) days of the orders from which [Parents] appeal." The motions panel of this court granted the motion, the Brief of Appellants was filed, and briefing continued as required by the Indiana Rules of Appellate Procedure.

### Discussion and Decision

### I. Notice of Appeal

 The Indiana Rules of Appellate Procedure provide that a party initiates an appeal by filing a Notice of Appeal with the trial court clerk within thirty days after entry of a final judgment. Ind. Ap-

pellate Rule 9(A)(1). The rule further states what is required to be included in the Notice of Appeal: a designation of the appealed judgment or order; a designation of the court to which the appeal is taken; direction for the trial court clerk to assemble the Clerk's Record; and a designation of the portions of the Transcript that should be prepared. App. R. 9(F); *see also* Form App. R. 9–1. "The timely filing of a notice of appeal is a jurisdictional prerequisite, and failure to conform to the applicable time limits results in forfeiture of an appeal." *Bohlander v. Bohlander,* 875 N.E.2d 299, 301 (Ind.Ct.App.2007) (citation omitted), *trans. denied; see also* App. R. 9(5) ("Unless the Notice of Appeal is timely filed, the right to appeal shall be forfeited except as provided by P.C.R. 2.[1] ").

▮ Parents argue their Notices of Intent to Appeal are "functionally equivalent" to the required Notice of Appeal and, though not stating so specifically, apparently argue their appeal should be considered timely as initiated on the date those Notices were filed.[2] Brief of Appellants at 9. Mother's Notice of Intent to Appeal states as follows:

> COMES NOW, [Mother], by Counsel ... and advises the Court that she wishes to pursue an appeal of the termination of her parental rights, which occurred on August 20, 2010.
>
> As a result of her having Counsel appointed for her in the Termination Cause, she respectfully moves the Court to appoint Counsel to represent her in the appellate process.

> WHEREFORE, Counsel for [Mother] requests that Counsel be appointed for [Mother] for purposes of processing her appeal.

Appellants' Appendix at 947; *see also id.* at 948 (Father's Notice of Intent to Appeal and Request for Appointment of Counsel that is identical in all relevant parts). It is clear that the purpose of this pleading was to have counsel appointed who would then file a Notice of Appeal on behalf of Parents. Other than identifying one of the two termination orders issued by the trial court, no part of this pleading fulfills the requirements of a Notice of Appeal as described in Appellate Rule 9. Only one of the two final appealable orders issued by the trial court is identified; the court to which the order is to be appealed is not identified; the clerk of the court is not requested to assemble the Clerk's Record; and the court reporter is not requested to transcribe any or all of the hearings conducted in this case. Rule 9, especially when considered in conjunction with the form Notice of Appeal in the appendix to the Rules, is clear regarding what must be included in a Notice of Appeal. None of those things are included in the Notices of Intent to Appeal filed by Parents.

Parents note that a Notice of Appeal may be supplemented at a later time, citing Appellate Rule 9(G). Appellate Rule 9(G) provides that any party may file a request with the court reporter "for *additional* portions of the *Transcript*." (Emphasis added.) The rule is therefore limited to supplementing a request for the transcript and use of the term "additional" implies that some portion of the transcript has already been requested. In short, this

---

1. Post–Conviction Rule 2 pertains to the right of an "eligible defendant" to file a belated notice of appeal of a conviction or sentence after a trial or plea of guilty in a criminal case and is not applicable herein. *See* Ind. Post-conviction Rule 2(1).

2. Because we disagree with this argument, we need not discuss the timeliness implications of this date for the rest of the filings in this case.

provision does not authorize transforming an entirely different pleading into a notice of appeal through a request for wholesale "supplementation" of the insufficient pleading. That Parents later filed a Notice of Appeal meeting the requirements of Appellate Rule 9 demonstrates they realized the Notices of Intent to Appeal were insufficient in themselves. Moreover, the filing dates of the ensuing appellate documents all relate to the September 23, 2010 filing of the Notice of Appeal.

 Parents also argue the notice of appeal is akin to the Indiana Tort Claims Act's notice of tort claim requirements. A claim against a political subdivision is barred unless the claimant files a notice of tort claim with that subdivision within 180 days of the incident. Ind.Code § 34–13–3–8(a). The notice must contain certain elements, including the time, place, and nature of the injury, the names of persons involved, and the amount of damages sought. Ind.Code § 34–13–3–10. The purpose of the notice requirement is to give the political subdivision a chance to investigate the facts surrounding an injury to determine its liability and prepare a defense. *Porter v. Fort Wayne Cmty. Schs.*, 743 N.E.2d 341, 344 (Ind.Ct.App. 2001), *trans. denied.* We liberally apply the notice requirements so as not to create " 'a trap for the unwary where [the statute's] purpose has in fact been satisfied.' " *Id.* (quoting *Galbreath v. City of Indianapolis*, 253 Ind. 472, 255 N.E.2d 225, 229 (1970)). Substantial compliance with the notice requirement may therefore be sufficient if the purpose is satisfied. *Id.*

 We do not agree that the notice of tort claim and notice of appeal are so similar that substantial compliance should be considered sufficient for a notice of appeal as it is for a notice of tort claim. Compliance with the notice requirements of the Tort Claims Act "is a procedural precedent which the plaintiff must prove and the trial court must determine before trial." *Brown v. Alexander*, 876 N.E.2d 376, 383 (Ind.Ct.App.2007), *trans. denied.* Noncompliance is an affirmative defense. *Id.* The Notice of Appeal, however, is jurisdictional. *Bohlander*, 875 N.E.2d at 301. Moreover, even if we were inclined to agree that the two should be treated similarly, the Notices of Intent to Appeal filed by Parents in this case do not fulfill the purpose of the notice of appeal requirement—to serve as a mechanism to alert the trial court and the parties of the initiation of an appeal and to trigger action by the trial court clerk and court reporter, setting in motion the filing deadlines imposed by the Appellate Rules.

For the foregoing reasons, we do not agree with Parents that their Notices of Intent to Appeal were "functionally equivalent" to a Notice of Appeal. The filing of those Notices did not, therefore, serve to initiate the Parents' appeal on the date of filing. The termination orders in this case were issued on August 20 and August 23, 2010. Thirty days from these dates was September 20 and September 22, 2010, respectively.[3] The Notice of Appeal was filed on September 23, 2010. Because Parents did not file a timely notice of appeal, they have forfeited their right to appeal.[4]

---

3. The thirtieth day after August 20, 2010 was September 19, 2010, but as that day was a Sunday, any filing deadline was extended to the next business day, September 20, 2010. *See* App. R. 25 (computation of time).

4. We note the motions panel of this court granted a motion by Parents allowing their brief to be filed and the case to proceed on the merits. The issue of whether Parents' appeal was timely was briefed by both parties and our decision here is on the merits of that issue. In dismissing this appeal for failure to

## II. Termination of Parental Rights

 Nonetheless, we recognize the constitutional dimensions of a termination case. *See Bester v. Lake County Office of Family & Children,* 839 N.E.2d 143, 146 (Ind.2005) ("The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children."). We have therefore reviewed the record and there is no clear error in the trial court's decision. *See In re D.B.,* 942 N.E.2d 867, 871 (Ind.App.2011) ("In deference to the juvenile court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous."). The evidence is that the family has long-standing problems that have not been adequately addressed by Parents and are unlikely to be resolved. The evidence supports the trial court's finding that there is a reasonable probability both that the conditions that resulted in the removal of the children from the Parents' home would not be remedied and that a continuation of the parent-child relationship poses a threat to the well-being of the children. *See* Appellants' App. at 934 (termination order with respect to five youngest children), 1054 (termination order with respect to oldest child); Ind.Code § 31–35–2–4(b)(2)(B). Further, the evidence supports the trial court's finding that termination of the parent-child relationship is in the best interests of the children. *See* Appellants' App. at 944, 1061; Ind.Code § 31–35–2–4(b)(2)(C). Finally, the evidence supports the trial court's finding that there is a satisfactory plan for the care and treatment of the children. *See* Appellants' App. at 945, 1062; Ind.Code § 31–35–2–4(b)(2)(D). The plan for the five youngest

children is adoption by their foster family. The plan for the oldest child is also adoption. The trial court acknowledged the difficulties presented by the fact the oldest child had run away from his out-of-home placement, but credited the court appointed special advocate's testimony that the child has had success while under DCS supervision, supporting the conclusion that an appropriate adoptive placement could also be successful.

### Conclusion

Parents' Notice of Appeal was untimely and their appeal from the termination of their parental rights is therefore dismissed.

Dismissed.

NAJAM, J., and CRONE, J., concur.

---

file a timely notice of appeal, we are not necessarily revisiting the decision of the motions panel, but it is clear we may do so. *See*

*Cincinnati Ins. Co. v. Young,* 852 N.E.2d 8, 12 (Ind.Ct.App.2006), *trans. denied.*