

FILED

Feb 16 2017, 5:43 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

James S. Stephenson
Joseph M. Hendel
Stephenson Morow & Semler
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Frederick D. Emhardt
Josh S. Tatum
Colin E. Conner
Plews Shadley Racher &
 Braun, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Town of Knightstown,<br>*Appellant-Defendant,*<br><br>v.<br><br>Dudley Wainscott,<br>*Appellee-Plaintiff.* | February 16, 2017<br><br>Court of Appeals Case No.<br>33A04-1604-PL-771<br><br>Appeal from the Henry Circuit<br>Court<br><br>The Honorable Mary G. Willis,<br>Judge<br>The Honorable Jack A. Tandy,<br>Judge Pro Tempore<br><br>Trial Court Cause No.<br>33C01-1502-PL-10 |

**Barnes, Judge.**

## Case Summary

In this interlocutory appeal, the Town of Knightstown ("Town") appeals the
trial court's partial denial of its motion for summary judgment regarding a

claim by Dudley Wainscott ("Wainscott"). On cross-appeal, Wainscott appeals the trial court's partial grant of the Town's motion for summary judgment. We affirm in part, reverse in part, and remand.

## Issues

The parties present several issues for our review, which we restate as:

> I.      whether the trial court properly found that Wainscott failed to file a timely tort claim notice;
>
> II.      whether the trial court properly granted summary judgment on Wainscott's negligence and equity claims and denied summary judgment on Wainscott's nuisance claim; and
>
> III.      whether the trial court properly denied summary judgment on Wainscott's breach of contract claim.

## Facts

Wainscott owns a historic building called the "Old Lodge" in Knightstown. A building called the "Bullet Hole" was adjacent to the Old Lodge, and the buildings shared a wall. In February 2013, the Town contracted with Shroyer Brothers, Inc. ("Shroyer") to demolish the Bullet Hole, and Shroyer began demolition on April 1, 2013. According to Wainscott, the demolition left "161 holes above ground and 240 holes below ground in the shared, load-bearing wall . . . ." Appellant's App. Vol. II p. 120. Wainscott also alleges that an unknown amount of vacuum tubes that were not removed from the building

were crushed during demolition, "potentially causing mercury to leak into the soil and groundwater." *Id.* at 119.

[4]     On April 14, 2013, Wainscott sent the following letter to the Town:

> I write to you as a concerned citizen of Knightstown, as well as a property owner directly impacted by the destruction of the Bullet Hole Building at 32 Main St.  Despite the fact that I have repeatedly requested to be kept informed, destruction of the building began without my knowledge, and without notification to the citizens of Knightstown.  The building at 32 Main Street was destroyed in an unsafe manner leaving the community exposed to construction debris and hazardous waste such as lead, mercury, mold, and lead based paint.  The long term impact of this exposure to the children of Knightstown remains to be seen.  The fact that no one was injured during the destruction is, indeed, fortunate for the city.  A structural engineer MUST be consulted for the remainder of the project to ensure the safety of the citizens of Knightstown.
>
> I am the owner of the Old Lodge Building at 34-38 Main Street.  My west wall was shared with the Bullet Hole building.  This is a load bearing wall critical to the structural integrity of my building and the doctor's building to the rear.  Without proper repair that entire corner of downtown Knightstown is likely to crumble leaving the citizens of Knightstown with an even more dangerous situation.  The wall is now exposed to the elements with holes in the 8' x 80' basement wall, major cracks in the 50' x 80' side wall and an exposed roof area shared with the doctor's office.
>
> At a minimum:
>
> 1.  All hazardous waste must be removed.

2. Holes in the basement wall need to be repaired, bricked and tucked. My basement is currently exposed to hazardous waste which remains at the construction site.

3. Cracks in the main wall need to be repaired, all plaster needs to be removed, and the wall needs to be resealed to ensure that it is water tight. I repeat this is a LOAD BEARING wall. Without proper repairs, supervised by a structural engineer, that entire corner of Knightstown is in danger of crumbling.

4. The roof towards the rear of the building which is shared with the doctor's office needs to be recapped to prevent water damage to the load bearing wall.

What is the city's plan for the open space? If it is to be a parking lot, then all necessary precautions must be taken to protect the west wall of 34-38 Main St. A two foot steal [sic] reinforced concrete barrier should be erected the length of the wall to protect the wall from damage due to compacting, and, to keep a driver from hitting the wall with a car.

Because my previous attempts to work with the City of Knightstown and to be kept informed were essentially ignored, I request your signature to acknowledge receipt of this letter. You are welcome to contact me at any time by phone, \*\*\*-\*\*\*-\*\*\*\*, or by email at \*\*\*\*\*.

Regards,

D.A. Wainscott

*Id.* at 24-25.

Wainscott then attended the April 18, 2013 meeting of the Town Council. The minutes of the meeting indicate that Clyde South, the Town Council president, stated: "the town intends to obey the law and if IDEM requires anything of the town, the town will comply. . . . [H]e also told Mr. Wainscott that if the town did anything to cause damage to his building, that we would fix the problem." *Id.* at 27. The Town hired an engineer to make recommendations. According to Wainscott, the Town "failed to follow any of its engineer's recommendations to repair the problems caused by its demolition." *Id.* at 120. Because the "shared wall was not designed to be exposed to the elements," water has leaked through the wall, leading to standing water and extensive mold in Wainscott's building. *Id.*

In December 2014, Wainscott's counsel sent a letter to the Town Council noting that Wainscott's building was, and continued to be, damaged by the demolition and that he would be forced to bring litigation against the Town if it did not stop further damage to the building, repair the damage already done, and compensate Wainscott for his losses.

In February 2015, Wainscott filed a complaint against the Town and Shroyer and alleged the following counts: Count I, an equitable claim against the Town; Count II, a breach of contract claim against the Town; Count III, a nuisance claim against the Town and Shroyer; Count IV, a negligence claim against the Town and Shroyer; and Count V, a violation of Indiana's Access to Public Records law against the Town. The Town filed a motion for summary judgment. The Town argued that it was entitled to summary judgment on

Counts I, III, and IV because Wainscott had failed to file a timely tort claims notice under the Indiana Tort Claims Act ("ITCA"). It also argued that it was entitled to summary judgment on Count II because Wainscott could not show the existence of a binding contract. As for Count V, the Town alleged that the claim was moot because Wainscott's public records requests had been satisfied. Wainscott responded that his April 2013 letter qualified as a proper tort claims notice. Alternatively, Wainscott argued that his equitable, nuisance, and breach of contract claims were not subject to the ITCA.

[8] After a hearing, the trial court entered an order granting in part and denying in part the Town's motion for summary judgment. The trial court found:

> [T]he only notice Wainscott gave to [the Town] is the letter of April 14, 2013. If the letter does not comply with the requirements of the ITCA, Wainscott is barred from bringing suit against [the Town] for all causes of action covered by the ITCA. In the letter, Wainscott addresses the Knightstown City Council and complains about how the demolition of the Bullet Hole Building has impacted his building, and also poses a danger in general to the residents of [the Town]. It refers to the circumstances of the demolition with sufficient clarity as to location and date as to alert the town to the events of which Wainscott complains. The letter states the town's actions may pose a threat to the general population and refers to potential long term danger to the children of Knightstown. However, the letter is missing a crucial element required by the ITCA.

> The Court finds the fatal flaw with Wainscott's letter is that it does not state that Wainscott intends to bring legal action against [the Town]. Case law has held this to be a requirement. *See Collier v. Prater*, 544 N.E.2d 497 (Ind. 1989), *Bienz v. Bloom*, 674

N.E.2d 998 (Ind. Ct. App. 1996), [*trans. denied*,] and the very recent case of *Kerr v. City of South Bend*, [48 N.E.3d 348 (Ind. Ct. App. 2015),] decided by the Indiana Court of Appeals on December 23, 2015.

Actual knowledge or action taken to cure a problem has been held not to obviate the requirement that an aggrieved party notify a governmental entity of its intent to pursue a legal claim. In the case at bar, [the Town] did respond to Wainscott's concerns by hiring an engineering firm. *Kerr* held that actual knowledge of the event and investigation steps do not relieve an aggrieved party of the ITCA requirement to state an intent to pursue legal action.

Appellant's App. Vol. II pp. 9-10. The trial court noted that the ITCA clearly applied to Count IV, the negligence claim, and clearly did not apply to Count II, the breach of contract claim. As for Count I, the equitable duty claim, the trial court found that it was "in essence a negligence claim," and was subject to the ITCA. *Id.* at 10. As for Count III, the nuisance claim, the trial court found "that there is not a clear answer in the law as to whether a nuisance action . . . is governed by the ITCA requirements" and found that the nuisance claim was "not a tort for purposes of the ITCA." *Id.* at 11. Finally, with respect to Count IV, the breach of contract claim, the trial court found that "there are questions of fact as to whether South did have authority to bind the town by his comments," that the town council did not oppose South's statements, and that "disputed legal inferences" could be drawn from South's statements such that summary judgment for the Town on the breach of contract claim was inappropriate. *Id.* at 12. The trial court also noted that Wainscott

acknowledged the Town did not violate the Open Records Law as alleged in Count V and that the Town was entitled to summary judgment regarding Count V.[1]  Ultimately, the trial court granted summary judgment to the Town on Count I (equity), Count IV (negligence), Count V (Open Records) but denied the Town's motion for summary judgment regarding Count II (nuisance) and Count III (breach of contract).  At the Town's request, the trial court certified the order for interlocutory appeal, and we accepted the interlocutory appeal pursuant to Indiana Appellate Rule 14.

## Analysis

[9] The parties' arguments concern the trial court's partial grant and partial denial of the Town's motion for summary judgment.  Summary judgment is appropriate only when the moving party shows there are no genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law.  *Schoettmer v. Wright*, 992 N.E.2d 702, 705 (Ind. 2013); *see also* Ind. Trial Rule 56(C).  Once that showing is made, the burden shifts to the non-moving party to rebut.  *Schoettmer*, 992 N.E.2d at 705-06.  When ruling on the motion, the trial court construes all evidence and resolves all doubts in favor of the non-moving party.  *Id.* at 706.  We review the trial court's grant of summary

---

[1] In one location, the trial court's order states that "Wainscott was entitled to summary judgment on Count 5." Appellant's App. Vol. II p. 13.  However, this is clearly a typographical error.  The order states that "Wainscott acknowledges that Knightstown did not violate the Open Records Law as alleged in Count 5" and later grants summary judgment in the Town's favor regarding Count V.  *Id.*

judgment de novo, and we take "care to ensure that no party is denied his day in court." *Id.*

## I.  Tort Claims Notice

[10]  The first issue is whether the trial court properly found that Wainscott failed to file a timely tort claim notice.  The ITCA provides that a tort claim against a government entity is barred unless the claimant provides the entity with notice of the claim within 180 days of the loss.[2]  Ind. Code § 34-13-3-8; I.C. § 34-13-3-1.  The notice "must describe in a short and plain statement the facts on which the claim is based," including "the circumstances which brought about the loss, the extent of the loss, the time and place the loss occurred, the names of all persons involved if known, the amount of the damages sought, and the residence of the person making the claim at the time of the loss and at the time of filing the notice."  I.C. § 34-13-3-10.  The notice must be in writing and delivered in person or by registered or certified mail.  I.C. § 34-13-3-12.

---

[2] Indiana Code Section 34-13-3-8(a) also requires the notice to be filed with the Indiana political subdivision risk management commission.  Indiana Code Section 34-13-3-8(b) notes:

> A claim against a political subdivision is not barred for failure to file notice with the Indiana political subdivision risk management commission created under IC 27-1-29-5 if the political subdivision was not a member of the political subdivision risk management fund established under IC 27-1-29-10 at the time the act or omission took place.

The Town made no argument concerning this provision in its motion for summary judgment or on appeal.  Consequently, we do not address this requirement.

[11] Our courts have held that a liberal application of the requirements of the ITCA notice statute is proper in order to avoid denying plaintiffs an opportunity to bring a claim where the purpose of the statute has been satisfied. *Brown v. Alexander*, 876 N.E.2d 376, 381 (Ind. Ct. App. 2007), *trans. denied*. The notice requirement "is intended to ensure that government entities have the opportunity to investigate the incident giving rise to the claim and prepare a defense." *Schoettmer*, 992 N.E.2d at 706 (citing *Galbreath v. City of Indianapolis*, 253 Ind. 472, 477, 255 N.E.2d 225, 228 (1970)). "Like any statute in derogation of the common law, the ITCA 'must be strictly construed against limitations on the claimant's right to bring suit.'" *Id.* (quoting *City of Indianapolis v. Buschman*, 988 N.E.2d 791, 794 (Ind. 2013)). So long as its essential purpose has been satisfied, the notice requirement "should not function as 'a trap for the unwary.'" *Id.* (quoting *Galbreath*, 253 Ind. at 480, 255 N.E.2d at 229). "The question of compliance is not a question of fact for the jury but ultimately a legal determination to be made by the court." *Indiana State Highway Comm'n v. Morris*, 528 N.E.2d 468, 471 (Ind. 1988).

[12] "Our courts have found that not all technical violations of this statute are fatal to a claim." *Brown*, 876 N.E.2d at 381. "Non-compliance has been excused in certain cases based on the theories of substantial compliance, waiver, and estoppel." *Id.* Substantial compliance is at issue here.[3] "In general, a notice

---

[3] The parties do not argue waiver or estoppel.

that is filed within the 180 day period, informs the municipality of the claimant's intent to make a claim and contains sufficient information which reasonably affords the municipality an opportunity to promptly investigate the claim satisfies the purpose of the statute and will be held to substantially comply with it." *Collier v. Prater*, 544 N.E.2d 497, 499 (Ind. 1989). "However, where a plaintiff, within the 180 day period, fails to file any notice of an intent to make a claim, actual knowledge of the occurrence on the part of the city, even when coupled with an investigation of the occurrence, will not suffice to prove substantial compliance." *Id.*

[13] "Substantial compliance with the statutory notice requirements is sufficient when the purpose of the notice requirement is satisfied." *Schoettmer*, 992 N.E.2d at 707. "The purpose of the ITCA's notice requirements is to provide the political subdivision the opportunity to investigate the facts surrounding an accident so that it may determine its liability and prepare a defense." *Porter v. Fort Wayne Cmty. Sch.*, 743 N.E.2d 341, 344 (Ind. Ct. App. 2001), *trans. denied*. "When deciding whether there has been substantial compliance, this court reviews whether the notice given was, in fact, sufficiently definite as to time, place, and nature of the injury." *Id.* "'What constitutes substantial compliance, while not a question of fact but one of law, is a fact-sensitive determination.'" *Schoettmer*, 992 N.E.2d 707 (quoting *Collier*, 544 N.E.2d at 499).

[14] The trial court found that Wainscott's April 14, 2013 letter did not comply with the ITCA because it did not state that Wainscott intended to bring legal action against the Town. There is no argument regarding the fact that the letter was

sent within 180 days of the loss, the letter described the facts on which the claim is based, the circumstances which brought about the loss, the extent of the loss, the time and place the loss occurred, the names of all persons involved if known, the amount of the damages sought, and the residence of the person making the claim at the time of the loss and at the time of filing the notice, and that it was either hand delivered or sent by registered or certified mail.[4] The sole issue on appeal is whether the letter included Wainscott's intent to assert a claim.

[15] In support of its argument, the Town cites several cases in support of its assertion that the notice must specifically inform the political subdivision of the injured party's intent to assert a tort claim. However, we addressed a similar issue in *Porter v. Fort Wayne Cmty. Sch.*, 743 N.E.2d 341 (Ind. Ct. App. 2001), *trans. denied*, which we find persuasive here. In *Porter*, the plaintiff was injured when his vehicle collided with a school bus. A couple weeks after the accident, his attorney sent the following letter to school officials:

> Re: My Client: Thomas Porter
>
> Your Insured: Fort Wayne Community Schools

---

[4] In its motion for summary judgment, the Town challenged whether the letter contained some of these items. On appeal, however, the Town makes no argument concerning them except to very briefly claim in its reply brief that the letter failed to include the amount of damages sought. To the extent that the Town's argument is cogent, we note that the failure to include a dollar amount of damages does not render a notice insufficient. *Scott v. Gatson*, 492 N.E.2d 337, 341 (Ind. Ct. App. 1986). The letter detailed the specific damages resulting from the demolition and requested specific relief. We conclude that the letter substantially complied with the requirement to include the amount of damages sought.

Date of Accident: September 29, 1997

Dear Ms. Mihavics[:]

Please be advised that I represent the interests of Thomas Porter as it relates to a collision which occurred on September 29, 1997, on Cook Road in Allen County. Fort Wayne Community School bus number 352, driven by Elizabeth Wesner, was exiting Northrup High School's parking lot and struck Mr. Porter's vehicle in the right front corner, causing significant damage to his truck as well as physical injuries to himself. From our initial investigation, it appears as though Fort Wayne Community Schools was the direct and proximate cause of the accident and, therefore, this letter is to inform you of our representation of Mr. Porter. It would be appreciated if you would communicate directly with me regarding this matter.

We will forward all information to support his claim upon receipt of the same.

*Porter*, 743 N.E.2d at 343. The plaintiff eventually filed a complaint against the school corporation, and the school corporation filed a motion for summary judgment arguing that the plaintiff had failed to comply with the notice requirements of the ITCA. The trial court granted summary judgment to the school corporation, and on appeal, we reversed.

[16] The plaintiff argued that his notice substantially complied with the ITCA, and the school corporation argued that the notice "did not contain an affirmative statement of intent to pursue a tort claim and did not otherwise satisfy the purpose of the notice requirements under the ITCA." *Id.* at 344. We held:

[The attorney's] letter was timely filed and included specific details regarding the collision. And although [the attorney] did not expressly state that [plaintiff] intended to file a claim against Fort Wayne and Wesner, [the attorney] stated his representation of [plaintiff's] "interests" and that additional information would be forwarded "to support his claim[.]" Record at 71. We conclude that [the attorney's] letter adequately informed Fort Wayne of [plaintiff's] intent to make a claim and provided sufficient information about the collision to facilitate Fort Wayne's investigation.

Indeed, the record shows that Fort Wayne considered [plaintiff's] letter to be notice of a tort claim. Fort Wayne's insurance company assigned a "claim number" to [plaintiff's] claim and maintained a file "reflective of [plaintiff's] condition." Record at 77. The insurance adjuster had "a general idea of [plaintiff's] injuries and initial treatment," sought to update her file, and made reference to settling his claim. Record at 77. Fort Wayne's conduct, then, was inconsistent with its position that [the attorney's] October 16, 1997 letter did not satisfy the purpose of the ITCA notice requirements. We conclude that [the attorney's] letter was sufficiently definite as to time, place, and nature of [plaintiff's] injuries and, thus, substantially complied with the notice requirements of the ITCA. The trial court erred when it granted Fort Wayne and Wesner's motion for summary judgment.

*Id.* at 344-45.

[17] Similarly, here, Wainscott's April 2013 letter made the Town aware that its demolition of the adjacent building had significantly damaged his property and specifically demanded repairs that the Town needed to perform. The matter was also discussed at the Town Council meeting, where the Town Council

president stated that "if the town did anything to cause damage to his building, that we would fix the problem." Appellant's App. p. 27. In response, the Town hired an engineer to evaluate the issues. The letter gave the Town an opportunity to promptly investigate the issues, determine its liability, and prepare a defense. Although the letter did not specifically state that it was a tort claims notice or state that Wainscott would be filing legal action, it clearly stated that the Town had damaged Wainscott's property and set out the items that the Town needed to correct. We conclude that, as in *Porter*, Wainscott substantially complied with the ITCA because the April 2013 letter adequately informed the Town of Wainscott's intent to make a claim. As a result, the trial court erred when it concluded that the April 2013 letter did not substantially comply with the ITCA.

## II. Negligence, Equity, and Nuisance Claims

[18] The Town challenges the trial court's failure to grant summary judgment in its favor on the nuisance claim, and Wainscott challenges the trial court's grant of summary judgment to the Town on the equity and negligence claims. The trial court granted summary judgment to the Town on Wainscott's negligence and equity claims because it found Wainscott failed to comply with the notice requirements of the ITCA. We have concluded that Wainscott's April 2013 letter substantially complied with the ITCA requirements. Consequently, the trial court erred by granting summary judgment on the negligence and equity claims.

As for the nuisance claim, the trial court concluded that the claim was not subject to the ITCA, and on appeal, the Town challenges this determination and argues that the claim is subject to the ITCA and to summary judgment because Wainscott failed to file a timely notice. We need not address whether the nuisance claim is subject to the ITCA. Even if the nuisance claim is subject to the ITCA, our holding that Wainscott substantially complied with the notice requirements means that the claim is not subject to summary judgment on this basis.

### III. Breach of Contract

The Town argues that the trial court erred by denying its motion for summary judgment on Wainscott's breach of contract claim. Wainscott's breach of contract claim is based on the Town Council president's statements to Wainscott at the April 2013 Town Council meeting. The minutes of the meeting indicate that the president stated: "the town intends to obey the law and if IDEM requires anything of the town, the town will comply. . . . [H]e also told Mr. Wainscott that if the town did anything to cause damage to his building, that we would fix the problem." Appellant's App. Vol. II p. 27.

In his complaint, Wainscott alleged that the Town had agreed to repair the common wall, that the Town was in breach of its oral contract by failing to repair the wall, and that Wainscott had suffered damages as a result of the breach. The Town sought summary judgment on the claim, and the trial court found that "there are questions of fact as to whether South did have authority to bind the town by his comments," that the town council did not oppose South's

statements, and that "disputed legal inferences" could be drawn from South's statements such that summary judgment for the Town on the breach of contract claim was inappropriate. *Id.* at 12.

[22] On appeal, the Town argues that there was no evidence of an offer, evidence that Wainscott accepted the offer, evidence of a meeting of the minds, or evidence of consideration.[5] The existence of a contract is a question of law. *Morris v. Crain*, 969 N.E.2d 119, 123 (Ind. Ct. App. 2012). "The basic requirements are offer, acceptance, consideration, and 'a meeting of the minds of the contracting parties.'" *Id.* (quoting *Batchelor v. Batchelor*, 853 N.E.2d 162, 165 (Ind. Ct. App. 2006)). "For an oral contract to exist, parties have to agree to all terms of the contract." *Kelly v. Levandoski*, 825 N.E.2d 850, 857 (Ind. Ct. App. 2005), *trans. denied*. To be valid and enforceable, a contract must be reasonably definite and certain. *Allen v. Clarian Health Partners, Inc.*, 980 N.E.2d 306, 309 (Ind. 2012).

[23] The only evidence of an alleged contract is South's statement, which is memorialized in the minutes of the town council meeting, that "if the town did anything to cause damage to his building, that we would fix the problem." Appellant's App. Vol. II p. 27. This vague statement simply cannot establish the necessary elements of a contract. There is no indication that Wainscott

---

[5] The Town also argues that South did not have the authority to "unilaterally bind" the Town to a contract with Wainscott. Appellant's Br. p. 25. Because we conclude that no contract was formed, we need not address this argument.

accepted the alleged offer, no evidence of a meeting of the minds of the terms of the contract, and no evidence of consideration. As a result, we conclude that the trial court erred when it denied the Town's motion for summary judgment on Wainscott's breach of contract claim.

## Conclusion

[24] Wainscott substantially complied with the ITCA notice requirements, and the trial court erred when it granted the Town's motion for summary judgment on his negligence and equity claims. The trial court properly denied summary judgment on Wainscott's nuisance claim, but it erred when it denied summary judgment on Wainscott's breach of contract claim. We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

[25] Affirmed in part, reversed in part, and remanded.

[26] Riley, J., and Bailey, J., concur.